568 F.2d 1044
 16 Fair Empl.Prac.Cas. 22, 15 Empl. Prac.
Dec. P 7954
TOMKINS, Adrienne E., Appellant,
v.
PUBLIC SERVICE ELECTRIC & GAS CO., a corp., G. H. Barnstore,
John R. Bridgeman, J. H. Chamberlin, B. C. Reilly,
Herbert D. Reppin, Frederick W.
Schneider, and William A. Vanderclock.
 No. 77-1212.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 7, 1977.
Decided Nov. 23, 1977.
 
 Nadine Taub, Women's Rights Litigation Clinic, Newark, N. J., for appellant; William S. Smith, Newark, N. J., of counsel.
 William E. Frese, Newark, N. J., of counsel, for appellee.
 Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Charles L. Reischel, Asst. Gen. Counsel, William H. Ng, Equal Employment Opportunity Commission, Washington, D. C., for the EEOC, as amicus curiae.
 Mary C. Dunlap, Equal Rights Advocates, Inc., Vilma S. Martinez, Linda K. Hanten, Mexican-American Legal Defense and Educational Fund, San Francisco, Cal., for Equal Rights Advocates, Inc. and Mexican-American Legal Defense and Educational Fund, as amici curiae.
 Before ALDISERT, ROSENN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 The question presented is whether appellant Adrienne Tomkins, in alleging that her continued employment with appellee Public Service Electric and Gas Co. (PSE&G) was conditioned upon her submitting to the sexual advances of a male supervisor, stated a cause of action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The district court determined that appellant did not state a claim under Title VII, and dismissed her complaint. 422 F.Supp. 553 (D.N.J.1976). Taking the allegations of Tomkins' complaint as true, see Walker, Inc. v. Food Machinery,382 U.S. 172, 174-75, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); Conley v. Gibson,355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), we find that a cognizable claim of sex discrimination was made and, accordingly, we reverse the dismissal of the complaint and remand the case to the district court for further proceedings.
 
 I.
 
 2
 Taken as true, the facts set out in appellant's complaint demonstrate that Adrienne Tomkins was hired by PSE&G in April 1971, and progressed to positions of increasing responsibility from that time until August 1973, when she began working in a secretarial position under the direction of a named supervisor. On October 30, 1973, the supervisor told Tomkins that she should have lunch with him in a nearby restaurant, in order to discuss his upcoming evaluation of her work, as well as a possible job promotion. At lunch, he made advances toward her, indicating his desire to have sexual relations with her and stating that this would be necessary if they were to have a satisfactory working relationship. When Tomkins attempted to leave the restaurant, the supervisor responded first by threats of recrimination against Tomkins in her employment, then by threats of physical force, and ultimately by physically restraining Tomkins. During the incident, he told her that no one at PSE&G would help her should she lodge a complaint against him.
 
 
 3
 Tomkins' complaint alleges that PSE&G and certain of its agents knew or should have known that such incidents would occur, and that they nevertheless "placed (Tomkins) in a position where she would be subjected to the aforesaid conduct of (the supervisor) and failed to take adequate supervisory measures to prevent such incidents from occurring." Amended Complaint, P 24. It further alleged that on the day following the lunch, Tomkins expressed her intention to leave PSE&G as a result of the incident. She agreed to continue work only after being promised a transfer to a comparable position elsewhere in the company. A comparable position did not become available, however, and Tomkins was instead placed in an inferior position in another department. There, she was subjected to false and adverse employment evaluations, disciplinary lay-offs, and threats of demotion by various PSE&G employees. Tomkins maintains that as a result of the supervisor's conduct and the continued pattern of harassment by PSE&G personnel, she suffered physical and emotional distress, resulting in absenteeism and loss of income.
 
 
 4
 In January 1975, PSE&G fired Tomkins. Following her dismissal, she filed an employment discrimination complaint with the Equal Employment Opportunity Commission, which ultimately issued a Notice of Right to Sue. After Tomkins filed suit in district court, PSE&G moved to dismiss the complaint on various grounds, including failure to state a claim upon which relief may be granted. In addressing the motion, the district court bifurcated the issues raised in the complaint. The court denied the company's motion to dismiss Tomkins' claim of company retaliation against her for complaining about her supervisor's conduct. However, the company's motion to dismiss Tomkins' claim against PSE&G for his actions was granted for failure to state a claim. The latter judgment was determined final by the district court under Rule 54(b), Fed.R.Civ.P., and this appeal followed.
 
 II.
 
 5
 Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), provides that "it shall be an unlawful employment practice for an employer . . . to discharge any individual . . . or otherwise to discriminate against any individual with respect to . . . terms, conditions, or privileges of employment because of such individual's . . . sex . . . ." In order to state a claim under this provision, then, it is necessary that Tomkins establish both that the acts complained of constituted a condition of employment, and that this condition was imposed by the employer on the basis of sex.
 
 A.
 
 6
 Tomkins claims that the sexual demands of her supervisor imposed a sex-based "term or condition" on her employment. She alleges that her promotion and favorable job evaluation were made conditional upon her granting sexual favors, and that she suffered adverse job consequences as a result of this incident.[1] In granting appellees' motion to dismiss, however, the district court characterized the supervisor's acts as "abuse of authority . . . for personal purposes." 422 F.Supp. at 556. The court thus overlooked the major thrust of Tomkins' complaint, i. e., that her employer, either knowingly or constructively, made acquiescence in her supervisor's sexual demands a necessary prerequisite to the continuation of, or advancement in, her job.
 
 
 7
 The facts as alleged by appellant clearly demonstrate an incident with employment ramifications, one within the intended coverage of Title VII.[2] The context within which the sexual advances occurred is itself strong evidence of a job-related condition: Tomkins was asked to lunch by her supervisor for the express purpose of discussing his upcoming evaluation of her work and possible recommendation of her for a promotion. But one need not infer the added condition from the setting alone. It is expressly alleged that the supervisor stated to Tomkins that her continued success and advancement at PSE& G were dependent upon her agreeing to his sexual demands. The demand thus amounted to a condition of employment, an additional duty or burden Tomkins was required by her supervisor to meet as a prerequisite to her continued employment.
 
 B.
 
 8
 The issue whether the additional condition was imposed because of Tomkins' gender, as required by Section 703(a)(1), gave rise to various hypotheticals in the briefs and oral argument presented to this court. For example, appellees urge that the supervisor could "just as easily" have sought to satisfy his sexual urges with a male, Appellees' Brief at 8, and thus his actions were not directed only toward the female sex.
 
 
 9
 Similar to the argument that his acts were merely personal rather than constituting an additional condition of employment, such hypotheticals are irrelevant in the posture in which the appeal reaches this court. It is to the face of the complaint that we must look. And the complaint clearly alleges that Tomkins was discriminated against, "on the basis of her sex", by virtue of her supervisor's actions and PSE&G's acquiescence in those actions. See Amended Complaint, P 39. Specifically, Tomkins averred that PSE&G knew or should have known the facts complained of. Amended Complaint, P 24.[3] Reading the complaint in the light most favorable to Tomkins, the essence of her claim is that her status as a female was the motivating factor in the supervisor's conditioning her continued employment on compliance with his sexual demands.[4]
 
 III.
 
 10
 Cases dealing with the issue presented in this appeal are scarce, and our research has produced no controlling precedent. Reference to certain of the cases is helpful, however, for a discernible pattern emerges from the decisions.
 
 
 11
 The District of Columbia Circuit was presented with similar facts in Barnes v. Costle, 561 F.2d 983 (D.C.Cir. 1977), a Title VII action in which appellant alleged that her job was abolished in retaliation for her refusal to engage in sexual relations with her male supervisor. Plaintiff claimed that in the course of her employment, the supervisor made a number of sexual advances and conditioned any enhancement of her job status on her acquiescing to his sexual demands. Noting appellant's assertion that "she became the target of her superior's sexual desires because she was a woman, and was asked to bow to his demands as the price for holding her job," at 990, the Court of Appeals determined that the alleged facts constituted a violation of Title VII, and therefore reversed the district court's grant of summary judgment in favor of defendant.
 
 
 12
 The Fourth Circuit, in Garber v. Saxon Business Products, 552 F.2d 1032 (4th Cir. 1977) (per curiam), reversed a district court's grant of a dismissal on similar facts. In the court's view, plaintiff's complaint that she had been terminated for refusing her male superior's sexual demands "allege(d) an employer policy or acquiescence in a practice of compelling female employees to submit to the sexual advances of their male superiors in violation of Title VII." At 1032. A similar result was reached in Williams v. Saxbe, 413 F.Supp. 654 (D.D.C.1976) (appeal pending), where it was determined that retaliatory actions of a male supervisor, taken because a female employee declined his sexual advances, constitute an "artificial barrier to employment which was placed before one gender and not the other," 413 F.Supp. at 657, and thus sex discrimination violative of Title VII.
 
 
 13
 Faced with claims that at first appear similar, two district courts reached different results. In Corne v. Bausch and Lomb, Inc., 390 F.Supp. 161 (D.Ariz.1975), rev'd & remanded on other grounds, 562 F.2d 55 (9th Cir. 1977), it was held that verbal sexual advances by a male employee to female fellow employees did not constitute actionable sex discrimination under Title VII. Corne is distinguishable from the facts before us because plaintiff Corne did not allege that acquiescence in the sexual advances was required as a condition of her employment. Appellant Tomkins, by contrast, clearly alleged such an employment nexus. Also distinguishable from the current appeal is Miller v. Bank of America, 418 F.Supp. 233 (N.D.Cal.1976) (appeal pending). Plaintiff Miller alleged that her male supervisor promised her job advancement in return for engaging in sexual relations with him, and subsequently dismissed her when she refused to do so. Not only was it undisputed that defendant bank discouraged such employee misconduct, but plaintiff had failed to avail herself of a bank complaint procedure designed to resolve precisely this sort of complaint. The Miller court drew a clear distinction between those facts and a situation where an employer is implicated in a complaint of improper sexual advances:
 
 
 14
 (T)here may be situations in which a sex discrimination action can be maintained for an employer's action, or tacit approval, of a personnel policy requiring sex favors as a condition of employment.
 
 
 15
 418 F.Supp. at 236.
 
 
 16
 Although these cases are not dispositive of this appeal, they disclose a pattern of how sexual advances in the employment context do or do not constitute a Title VII violation. The courts have distinguished between complaints alleging sexual advances of an individual or personal nature and those alleging direct employment consequences flowing from the advances, finding Title VII violations in the latter category. This distinction recognizes two elements necessary to find a violation of Title VII: first, that a term or condition of employment has been imposed and second, that it has been imposed by the employer, either directly or vicariously, in a sexually discriminatory fashion. Applying these requirements to the present complaint, we conclude that Title VII is violated when a supervisor, with the actual or constructive knowledge of the employer, makes sexual advances or demands toward a subordinate employee and conditions that employee's job status evaluation, continued employment, promotion, or other aspects of career development on a favorable response to those advances or demands, and the employer does not take prompt and appropriate remedial action after acquiring such knowledge.
 
 IV.
 
 17
 We do not agree with the district court that finding a Title VII violation on these facts will result in an unmanageable number of suits and a difficulty in differentiating between spurious and meritorious claims. The congressional mandate that the federal courts provide relief is strong; it must not be thwarted by concern for judicial economy. More significant, however, this decision in no way relieves the plaintiff of the burden of proving the facts alleged to establish the required elements of a Title VII violation. Although any theory of liability may be used in vexatious or bad faith suits, we are confident that traditional judicial mechanisms will separate the valid from the invalid complaints.
 
 
 18
 The judgment of the district court will be reversed and the cause remanded for further proceedings.
 
 
 
 [1]
 Appellant suggests as an alternate theory of liability that, in addition to prohibiting specific discriminatory acts, Title VII mandates that employees be afforded "a work environment free from the psychological harm flowing from an atmosphere of discrimination." Brief for Appellant at 16. Analogizing to EEOC findings of Title VII violations where employees have been subjected to their supervisors' racial epithets and ethnic jokes, e. g., EEOC Decision No. 0679, 4 FEP Cases 441 (1971), appellant contends that the sexual advances and subsequent retaliatory harassment to which she was subjected created an environment of debilitating sexual intimidation constituting a barrier to her employment opportunities. Because we hold that the facts as alleged constitute a sex-based condition of employment in violation of Title VII, we need not pass upon this second theory
 
 
 [2]
 Although the specific prohibition against sex discrimination was never the subject of legislative hearings (the word "sex" was added to the 1964 Civil Rights Act's proscriptions against discrimination on the basis of "race, color, religion, and national origin" during limited House debate), the Supreme Court has taught that the purpose of Congress in enacting Title VII was "the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971)
 
 
 [3]
 PSE&G contends that the supervisor's actions cannot give rise to company liability because he was not acting pursuant to company policy. Whether the incident was company policy or a purely personal incident is a factual determination which this court is not required to make it is sufficient for our purposes that Tomkins alleged the former
 
 
 [4]
 We would note that, although irrelevant, the situation posed in PSE&G's hypothetical would cause no great concern. Title VII prohibits discrimination against men as well as women. See Rosen v. Public Service Electric and Gas Co., 409 F.2d 775 (3d Cir. 1969); 477 F.2d 90 (3d Cir. 1973)
 In holding that there was no sex discrimination because "gender lines might as easily been reversed, or even not crossed at all", 422 F.Supp. at 556, the district court took much too narrow a view of what can constitute sex-based discrimination under Title VII. It is not necessary to a finding of a Title VII violation that the discriminatory practice depend on a characteristic "peculiar to one of the genders", Williams v. Saxbe, 413 F.Supp. 654, 658 (D.D.C.1976), or that the discrimination be directed at all members of a sex, see Sprogis v. United Airlines, 444 F.2d 1194 (7th Cir. 1971), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). It is only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff "had been a man she would not have been treated in the same manner," Skelton v. Blazano, 13 FEP cases 1803, 1807, 424 F.Supp. 1231, 1235 (D.D.C.1976); see also Slack v. Havens, 7 FEP cases 885 (S.D.Cal.1973), aff'd., 522 F.2d 1091 (9th Cir. 1975); EEOC decision No. 71-2227, 3 FEP cases 1245 (1971).