Louise Johnson BURNS, Plaintiff,

v.

**TERRE HAUTE REGIONAL HOSPITAL
and Hospital Corporation of
America, Defendants.**

No. TH 79–109–C.

United States District Court,
S.D. Indiana,
Terre Haute Division.

Sept. 2, 1983.

**1302**

Dennis H. Stark, Jessie A. Cook, Terre Haute, Ind., for plaintiff.

Sacopulos, Crawford & Johnson, Terre Haute, Ind., for defendants.

## MEMORANDUM OPINION

BROOKS, District Judge.

This action was initiated by plaintiff, Louise Johnson Burns, after resort to administrative process through the Equal Employment Opportunity Commission (hereinafter "EEOC") and receiving letters of "right to sue" against defendants Terre Haute Regional Hospital and its owner and operator, Hospital Corporation of America (hereinafter "HCA"). The case was tried to the Court September 8–10, 1981, at Terre Haute, Indiana. The Court enters its Findings of Fact and Conclusions of Law in memorandum form pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

The plaintiff has made three allegations, each coming under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e–2(a)(1):

(1) She alleges defendants violated the statute in failing to promote her to the position of Coordinator of the Offices of Respiratory Therapy, EKG and EEG in June, 1977, because of her sex;

(2) She alleges defendants violated the statute in discharging her from their employ because she resisted sexual advances made by her immediate supervisor;

(3) She alleges the defendants failed to promote her, as in the first count, because of her national origin.

The latter count was dropped during the trial on defendants' motion under Rule 41(a) of the Federal Rules of Civil Procedure. Further, the parties agreed to bifurcate the trial issues of liability and damages, the former being the lone focus of this proceeding and opinion. Following conclusion of the trial, counsel for the parties submitted briefs.

## PROCEDURAL HISTORY

The plaintiff, Mrs. Burns, was discharged by the defendants on October 19, 1977. She filed a charge of discrimination with the EEOC on November 3, 1977, on grounds the defendants failed to promote her because of her sex. An amended charge was filed with the EEOC December 19, 1977, in which plaintiff alleged discrimination in employment on the basis of her national origin and sex. Specifically Mrs. Burns alleged her immediate supervisor had made sexually suggestive comments and advances toward her. A right to sue letter was issued May 15, 1979. A second charge was filed with the EEOC December 19, 1977, alleging discrimination on the basis of sex and national origin was the cause of her termination as Chief Respiratory Therapist on October 19, 1977. She claimed resistance to the sexual advances of her supervisor was the basis of the dismissal. A right to sue letter on the second charge was also issued May 15, 1979.

## PROPER DEFENDANTS

■ Counsel for HCA has argued plaintiff's allegations must be construed against Terre Haute Regional Hospital

only, and not HCA. The hospital is operated by Terre Haute Community Hospital, Inc., an Indiana corporation which is a subsidiary of HCA. Plaintiff correctly argues both parties are properly here as defendants. Title VII is to be liberally construed to enforce the purposes of Congress to eliminate discrimination in the employment setting. *Rogers v. Equal Employment Opportunity Commission*, 454 F.2d 234 (5th Cir.1971), *cert. denied* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343. That liberal construction also is to be given the term "employer". *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973). Factors to be considered in determining whether technically separate corporate entities may be consolidated in an employment discrimination matter include the interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control. *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir.1977). Where these elements are present, consistent with the liberal interpretation of Congressional intent, a parent corporation is liable as an employer under Title VII in actions like the cause considered here. *Linsky v. Heidelberg Eastern, Inc.*, 470 F.Supp. 1181 (E.D.N.Y. 1979). The evidence in this case indicates a close link between the codefendants. HCA exerts substantial control, if not all of the control, over Terre Haute Regional Hospital's operations. Both the Hospital and HCA are appropriate defendants in this action.

## SUMMARY OF FACTS

The plaintiff, Louise Johnson Burns, had been employed for approximately twelve (12) years (1965–1977) by defendant Terre Haute Regional Hospital, owned and operated by co-defendant Hospital Corporation of America, and by its predecessor in operating the hospital, the Sisters of St. Francis. Until 1975, when HCA purchased the facility, the institution was called St. Anthony's Hospital.

Mrs. Burns, fifty-four (54) years of age at the time of the trial, is a foreign-born United States citizen, naturalized in 1962. She was born and lived at Mannheim, Germany, and received formal education in that country: eight (8) years of grade school, three (3) years of technical school and approximately nine (9) months of training as a pediatrics nurse at a children's home/hospital. She held a variety of jobs in this country before joining the St. Anthony's staff from 1962 to 1964 and again from 1965 to the time of her dismissal. She began her career as a nurse's aid. Her job performance in succeeding years earned her positions of increasing responsibility and authority. She was Chief Respiratory Therapist in October, 1977, at the time of her termination. She retained that position when the Sisters of St. Francis sold the hospital to HCA in 1975, although her authority was subsequently eroded without a change in title.

Defendant Terre Haute Regional Hospital is among the facilities owned by HCA, which has corporate offices at Nashville, Tennessee.

As Chief Respiratory Therapist, Mrs. Burns' duties included scheduling, policy, training, and purchasing. Both the staff and the demands in the department increased as more patients were treated and more sophisticated equipment acquired. Evaluations of her job performance consistently ranked the plaintiff "above average".

Hospital administration was significantly altered in 1975 when HCA purchased the facility. The corporation's policy was to retain department heads and other management employees, at least initially. There were drastic changes in technique and philosophy of management under the new owners. Streamlining of the budget created more work for the respiratory therapy department as staff positions were reduced. Additionally, management and other personnel participated in various training sessions and seminars intended to intro-

duce them to the new owner's approach to hospital operations.

As part of the change in administration, Mrs. Burns reported to an assistant hospital administrator, Ernest Wilder, as of November, 1976. Previously, she had reported directly to the administrator. It was during meetings with Mr. Wilder that plaintiff alleges she was sexually harassed. Mr. Wilder's initial evaluation of the plaintiff was "average", a ranking not unusual for a first-time evaluation by the new management. Mrs. Burns discussed the evaluation, apparently the lowest she had received as a hospital employee, with administrator Allyn Harris. She expressed concern over the evaluation and described Mr. Wilder's alleged harassment. There is no evidence indicating that Mr. Harris took any action based on that conversation. No formal grievance proceeding available to hospital employees was initiated. In fact, the plaintiff took no formal action with regard to Mr. Wilder's alleged remarks for more than a year.

The changes introduced by HCA apparently were a substantial alteration of many hospital procedures and practices. Late in 1975, it became evident problems existed in the respiratory therapy department. While plaintiff denies knowledge of these complaints, and although her personnel record is nearly devoid of any notation of complaint, testimony indicates all was not running smoothly in plaintiff's department. Among the changes introduced by hospital administration was a consolidation of departments combining respiratory therapy, EEG (electroencephalogram) and EKG (electrocardiogram) into the Department of Electro-Diagnostics. Plaintiff was not resistant to this change—she had, in fact, proposed such a consolidation of departments. Plaintiff and two other staff members were considered for the new position as director of the department, but officials concluded more management experience was needed in the job. An outside search led the hospital to employ William Haley.

Mr. Haley remained employed for three (3) months. The vacancy created by his departure is the focus of the plaintiff's first allegation in this suit. Steve Tryon, an employee with less seniority than Mrs. Burns in the respiratory therapy department part of the Department of Electro-Diagnostics, was appointed on an interim basis to assume Mr. Haley's duties. He eventually received the permanent position.

Mrs. Burns was a dedicated hospital employee who was fiercely proud of her achievements while working for St. Anthony's and Terre Haute Regional hospitals. During the course of her employment she worked long hours and with apparent sincere dedication to the welfare of patients. As a manager, this dedication to work and the high expectations she had of employees under her supervision made her unpopular among some of her subordinates. The plaintiff concedes only normal friction in a high pressure employment situation. Testimony indicated, however, that plaintiff's sometimes autocratic management style caused employee complaints and was of concern to her superiors. An abnormally high rate of personnel turnover was explained by plaintiff as a combination of employee migration to higher rates of pay in big city hospitals and by failings in the employee work ethic.

Her attitude toward the new hospital management was not enthusiastic. She degraded superiors, carried out their orders in a "half-hearted" manner, according to testimony, and failed to react positively when counselled to soften her approach with subordinates. While her duties were still demanding, she resisted changes introducing more paperwork into the hospital's operation, claiming she had little time for such work.

Plaintiff had not received a college education, but she had attended seminars and training sessions in her field during the course of employment. She was a certified respiratory technician. However, her po-

tential to be a registered technician—a higher status in which hospital administration accorded some importance—was unlikely without a college degree. Her most attractive qualifications at the time of the Haley vacancy were her seniority and previous management experience, the latter being of evident concern to the hospital administration. Mr. Tryon, who received the interim and eventual permanent position, was college educated, had "registry potential", and had received positive evaluations in his job performance by supervisors, including the plaintiff. He had no previous management experience at the hospital.

Approximately four (4) months after Mr. Tryon assumed the interim position as Director of the Department of Electro-Diagnostics, plaintiff was terminated as a hospital employee. In mid-1977 hospital administrators learned of severe financial difficulties facing the facility. A patient census revealed the number of persons hospitalized had not met projections. The revenue problems necessitated, in the hospital's judgment, a reduction of personnel.

The Department of Electro-Diagnostics was analyzed as a likely target of such a reduction. Fifteen (15) persons were employed there, three (3) of whom had management-like responsibilities. Hospital officials characterized the department as "top heavy". Three criteria were used by the hospital in determining who should be terminated:

(1) whether the position was necessary

(2) seniority, and

(3) any overriding problems with performance.

The plaintiff's position was eliminated on at least two of these grounds—a determination that a Chief Respiratory Therapist was no longer necessary after the consolidation of departments and her growing resentment for the hospital administration creating problems with her performance. It was hospital policy to offer senior employees whose positions were to be eliminated a reduced employment status. Parties responsible for these judgments—Mr. Harris, Mr. Wilder and Personnel Director John Karas—agreed plaintiff was unlikely to accept such a "demotion" and would likely become more uncooperative if she did, to the detriment of the department. Forty-seven (47) employees were terminated in October, 1977, as a result of hospital cutbacks. However, because of administration perceptions of plaintiff's hostility toward management, she alone among the forty-seven (47) was further blocked from consideration for re-hiring upon improvement in the hospital's financial condition.

## CONCLUSIONS OF LAW

### I

The plaintiff proceeds under a disparate treatment theory, alleging in her first count that she was denied promotion because of her sex. The order and burdens of proof for such an allegation were outlined in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and have been followed since, *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In short, the plaintiff must allege that she belong to a minority within the meaning of the relevant statute, 42 U.S.C. 2000e–2(a)(1), that she applied for the job, was qualified for the job, and was rejected in pursuit of that job. Once this prima facie case is established, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell-Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The plaintiff then has an opportunity to demonstrate that the defendants' explanation of those reasons is merely a pretext for discriminatory motivations. *Id.* at 804, 93 S.Ct. at 1825.

Plaintiff clearly meets two of the criteria. She is female and failed to be appointed to the job in question.

■ The focus in this cause is on the qualifications and application of the plaintiff as Director of the Department of Electro-Diagnostics. Plaintiff contends only a basic ability to perform the job and establishing that similar work has been performed will meet the qualifications requirement. Specific job descriptions aside, it would appear the plaintiff was at least minimally qualified for the position in question.

Defendants, however, contend plaintiff failed to apply for the job, claiming such a failure destroys her prima facie case. The facts reveal plaintiff did not make a formal application for the Director of the Department of Electro-Diagnostics when Haley vacated the position. She was, however, considered three (3) months earlier when Mr. Haley was hired and defendant concedes Mrs. Burns also was discussed as a possible replacement to Mr. Haley at the time of his departure. There was no formal application process instituted for in-house personnel interested in such a promotion. Applications were accepted earlier in the year when the hospital had conducted an outside search to fill the newly-created position. Defendants concede it was their policy to consider in-house personnel for vacancies based on "ability and efficiency", according to the hospital's employee handbook. It is reasonable to conclude that formal application was not expected nor was it necessary. Plaintiff had a reasonable expectation, based on past practice and hospital policy, that she would be considered for such a promotion, negating any necessity to formally apply for the position. Consequently, the plaintiff has satisfied her initial burden in establishing a prima facie case.

Once the plaintiff establishes a prima facie case, the court must focus on the question of discrimination. *U.S. Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). The defendants must advance rea-sons for its employment decision in rejecting the plaintiff.

The conflict of views in this case is over the plaintiff's qualifications and the requirements of the defendant in filling a major management position in the hospital. Plaintiff contends her long period of employment and testimony attesting to her competence were sufficient to assume the higher management position. Similarly, she contends Steve Tryon, who was selected to fill the vacancy, had less management experience and seniority.

Defendants' burden is to demonstrate the employee hired other than the plaintiff was as qualified, not more qualified. *Burdine, supra.* The defendants' explanation of the legitimate reasons for not hiring the plaintiff must be clear and reasonably specific. *Id.* 450 U.S. at 258, 101 S.Ct. at 1096. This evidence not only permits rebuttal of the prima facie case, but also provides plaintiff a framework for the plaintiff to demonstrate the defendants' explanation was a pretext, that is, not true reasons for the employment decision. *Burdine, supra.*

The defendants considered several factors in making the determination not to hire plaintiff for the advanced management position. She lacked formal education which would have made her a likely candidate for registry, a factor weighing heavily in favor of Mr. Tryon, who had a college degree. Of grave concern were the plaintiff's difficulties in relationship with her subordinates and her perceived resistance to changes introduced by the hospital's new owners. The responsibilities of the Director of the Department of Electro-Diagnostics required not only a minimal degree of technical skill, which the plaintiff apparently possessed, but a sensitivity to the needs of both the employees who served under the Director and the employers to whom the Director would answer. Emphasis was to be placed on the potential Director's ability to relate to superiors and a

sensitivity to the political workings of an institution like a hospital. While Mr. Tryon had no formal management experience, he had been a good employee, demonstrated technical skills, and, because of his educational background, had the potential to advance to higher levels of proficiency and status in his field.

The plaintiff argues the reasons advanced by the defendant in its failure to hire her as Director of the Department of Electro-Diagnostics were merely pretexts for unlawful discrimination. She asserts the reasons are subjective, vague and unrelated to the qualities necessary for successful on-the-job performance. While such criteria are open to attack they are not per se illegal *Rogers v. International Paper Company*, 510 F.2d 1340 (8th Cir.1975). She further asserts there was no business necessity for defendant's emphasis on Mr. Tryon's educational background and potential to become a registered technician.

■ There was no specific job description to which the Court may refer. Testimony revealed a number of factors were considered by the defendants in making hiring decisions, especially persons already in their employ. While the description of those qualifications may not have been precisely stated, there is no indication that the criteria used to evaluate the plaintiff, Mr. Tryon, or any other candidate for the position in question were irrational or illegal. "[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based on unlawful criteria." *Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096. Regardless of her seniority, plaintiff's qualifications for the promotion were not substantially better than Mr. Tryon's. While there is no evidence of business necessity for skills belonging to Mr. Tryon, but not to the plaintiff, the defendants are permitted to take factors like registry eligibility into account in assessing the comparative skills of the job aspirants. None of the reasons articulated

by the defendants in reaching the decision to hire Mr. Tryon, rather than the plaintiff, constitutes discriminatory reasons within the parameters of Title VII.

■ Plaintiff at all times retains the burden of persuasion, even when the defendant must put on evidence of the reasoning behind the employment decision. *Burdine, supra.* The Court is unpersuaded that any motivation beyond the balancing of the individual skill of employees with potential to fill the Haley vacancy existed in this matter.

In light of the foregoing, plaintiff's claim under the first count of this action alleging failure to promote her to the position of Director of the Department of Electro-Diagnostics because of her sex is hereby DENIED.

## II

As to the second count in which plaintiff alleges her termination as an employee of the defendant was because of sexual harassment, defendants contend this Court lacks subject matter jurisdiction. Specifically, defendants argue the alleged conduct involving sexual innuendoes and advances occurred in November, 1976, beyond the one hundred eighty (180) day limit for filing complaints with the Equal Employment Opportunity Commission.

Because the plaintiff asserts sexual harassment as an independent violation of Title VII leading to her eventual dismissal, this jurisdictional matter must be resolved if the merits are to be considered.

In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court. The Court ruled that a timely charge, similar to a statute of limitations, is subject to waiver, estoppel, and

equitable tolling. Therefore, this Court has the requisite jurisdiction to consider the second count of this suit.

█ Sexual harassment of female employees is gender-based discrimination which can violate the terms of Title VII. Violation of the statute occurs when a supervisor makes sexual advances or demands to a subordinate and conditions that person's job status, evaluation, promotion, or continued employment, on a favorable response to those advances. *Tomkins v. Public Service Electric & Gas Co.*, 568 F.2d 1044 (3rd Cir.1977).

Plaintiff attempts to establish a prima facie case by asserting that she perceived the sexual comments and advances as a condition of employment and the supervisor involved was acting with actual or constructive authority.

█ In dealing with the merits of this allegation, however, the Court is unpersuaded that sexual harassment occurred in this case. The plaintiff has testified that assistant hospital administrator Ernest Wilder made suggestive comments to her early in his term of employment with the hospital. Plaintiff reported concerns over these remarks to the hospital administrator after receiving an "average" evaluation from Mr. Wilder, a ranking not uncommon in the new ownership's assessment of employees. The "average" rating certainly did not constitute an immediate threat to the employee's status—others in the hospital had received similar evaluations and retained their jobs. The plaintiff was familiar with the hospital's grievance procedures and took no other action to protest Mr. Wilder's alleged misconduct. The only other evidence before the Court is the testimony of the plaintiff's husband, who was told of the incident by the plaintiff while they were engaged to be married, and two of the plaintiff's fellow employees, who also could testify only to the plaintiff's reporting of the incident. No other evidence exists to show misconduct by Mr. Wilder, who vehe-

mently denies the allegations. It is possible the plaintiff misinterpreted remarks made by Mr. Wilder, just as it is possible her allegations were accurate. But without more evidence to verify the misconduct and continuing discrimination alleged, the Court is unpersuaded and cannot find for the plaintiff on the merits of the second count. It is implausible that her refusal to accede to the alleged sexual misconduct and the subsequent, typical "average" rating of the plaintiff were the sole grounds of her dismissal nearly a year later. Further, the decision to terminate the plaintiff was not within Mr. Wilder's exclusive authority. The hospital's administrator and personnel director also were involved in that decision-making process. There is no evidence whatever that a conspiracy existed between those parties to dismiss the plaintiff because she would not accede to Wilder's alleged sexual advances. The incidents alleged are too attenuated from the ultimate dismissal and other reasonable grounds were given the plaintiff for that dismissal, *i.e.* the economic difficulties of the hospital, the "top heavy" characterization of her department, and the concerns about the plaintiff's attitude toward her job, her subordinates, and her employers.

In light of the foregoing, plaintiff's claim under the second count of this action alleging she was terminated from her position with the defendants because she resisted the sexual advances of her immediate supervisor is hereby DENIED.

IT IS SO ORDERED.