**Rita M. SKELTON, Plaintiff,**

v.

**Michael P. BALZANO, Individually and as Director, ACTION Agency, Defendant.**

Civ. A. No. 75–2098.

United States District Court, District of Columbia.

Dec. 7, 1976.

**1232**

Marna S. Tucker, Washington, D. C., for plaintiff.

David H. Shapiro, Special Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

GESELL, District Judge.

This is a sex discrimination case, arising from Government employment, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Equal Employment Act of 1972 (Pub.L. 92–261). There is no administrative record. The case came to court when ACTION, a Government agency and plaintiff's employer, failed to act on her complaints. After a period of discovery there was a·full *de novo* trial before the Court sitting without a jury. Ten witnesses were heard, and documents and stipulations submitted.

Now, after full hearing, the Court enters its findings of fact and conclusions of law.

The ACTION Agency is charged with responsibility for providing coordination and administration of international and domestic volunteer activities, including the Peace Corps and domestic programs authorized by the Domestic Volunteer Service Act of 1973 (42 U.S.C. § 4951). Plaintiff, a white woman, has been employed by the Agency since July, 1971. Starting at GS–11, in December, 1971, she was promoted to a GS–12. In June, 1972, she transferred to ACTION's Region V Office in Chicago to become a Program Officer for the State of Indiana. Plaintiff was a Program Officer for Indiana at a GS–12 level until March, 1973, when she became Acting State Director for the State of Ohio and served in that capacity until March, 1974, when another woman, Anne Johnson, was chosen as permanent State Program Director of Ohio, a GS–13 position. Ms. Johnson was transferred into the position laterally under an exception to the Agency Merit Promotion procedures. Friction developed almost immediately between plaintiff and Johnson, and plaintiff transferred to Washington where she is now a GS–12 Program Specialist of the Office of Special Volunteer Programs at the headquarters of the ACTION Agency.

Plaintiff was considered a highly qualified candidate for the Ohio directorship, and had repeatedly received above average performance ratings. The Agency concedes that she performed "adequately" while serving as Acting Director in Ohio.

Plaintiff seeks a determination that she failed to be selected or recommended for the Ohio directorship because of sex discrimination. She asks for a retroactive promotion to GS–13, designation as a state director, injunctions against reprisal and harassment, damages, and attorneys' fees. She supports her basic sex discrimination claim by reference to the Ohio situation, as well as to other alleged examples of discriminatory treatment, some of which have been resolved administratively as a result of prior complaints.

Plaintiff's theory of her case is that Myron B. Kuropas, Director of Region V (who had overall supervision of Ohio), appointed her Acting State Director of Ohio, and lulled her into a belief she would be promoted to permanent Director by promises and other actions with two objectives in mind: first, to distract her from applying for other state directorships in the region (Wisconsin and Michigan) where Kuropas had pre-selected males as Acting Directors; and, second, to force her eventual resignation by denying her the job and by placing her in a situation where conflict with her female supervisor was likely to develop. Kuropas denies these charges. While he did promise to support Skelton for the Ohio directorship, he later took affirmative steps to make certain she did not receive the job. He asserts, however, that this action on his part reflected plaintiff's inadequate job performance. As noted, personality conflicts immediately did develop between Johnson and plaintiff which brought about plaintiff's transfer to Washington.* Kuropas denies any design to discredit either woman, and generally insists he did not discriminate against any woman.

While the Ohio situation is the cornerstone of the discrimination claim, the proof went afield to present evidence of examples of sex bias in Region V, and to detail the long and often stormy course of earlier dealings between Kuropas and plaintiff.

The record reflects a chaotic personnel situation in Region V. Kuropas was beset with turmoil in the staff which his brisk, arbitrary manner and basic insecurity did much to generate. Some men apparently fared no better than some women. He was a martinet.

Kuropas occasionally bent a rule in favor of men. He had a short fuse, and became angry when his judgment was questioned, particularly by women. His attitude toward equal opportunity programs was negative, causing him, contrary to regulations, to maintain control over EEO complaints.

In one instance involving plaintiff the Civil Service Commission determined Kuropas acted against her as reprisal for filing one of her many EEO complaints. Preliminary evaluations of the Region by staff concerned with minority relations showed little desire on his part to deal effectively with minority problems. Affirmative action plans were, however, promulgated, and when women pressed for attention to their problems he made some effort to quiet things down, although he dealt with these matters in a clumsy fashion. He had no personnel management experience. His office was understaffed, the programs new and difficult, and the work went forward under continual stress.

Complaints by women employees of Region V seeking improved job opportunities were frequent. Early evaluations of the Regional Office reflected many deficiencies in its handling of minority problems and an atmosphere prejudicial to advancement of women. Statistical material stipulated by the parties suggests, but fails to demonstrate conclusively, that women have been less likely than males to be promoted to GS–12 and above in Region V.

Plaintiff is a self-made professional woman who has advanced from early employment as a secretary into positions of increasing administrative responsibility. She is in large part self-trained. Throughout her Government service she has shown exceptional competence and diligence, working tirelessly long hours, mastering difficult problems as presented, and steadily growing in responsibility. She developed special skills as a programmer, and became knowledgeable as to the procedures, reporting, documentation and other requirements that underly the various grant programs which relate to ACTION's mission. She had difficulties working for the Indiana State Director, a male. He wanted her out. She thought him "stupid," and threw darts at his picture in her office. Kuropas apparently felt the State Director was partly

* On March 25, 1974, plaintiff filed a grievance against Johnson and others. On June 3, 1974, six additional grievances were filed, and on June 27, 1974, another was added, all against Johnson.

responsible, but recognized plaintiff's weakness in dealing with him.

Plaintiff was detailed to the Ohio office on March 16, 1973. For the period October, 1972, to March, 1973, she received the highest performance rating possible, one approved by Kuropas himself. She received a rating of "outstanding." Her difficulties with her male boss, the Director of Indiana, apparently were not considered detrimental to her progress. The State Directorship of Ohio, to which she was assigned on an acting basis, was the most significant directorship in the Region. It involved some 68 different programs of consequence to ACTION, and was the largest of the six offices in the Region.

But the Ohio assignment led to a deterioration of her relations with Kuropas. Ohio was very challenging. It was the most active state, and had the most programs. Plaintiff felt she needed more help and support. She constantly complained by letter and telephone. Her needs were not fully met. Her efforts to change or cut back some programs led to complaints by the state officials involved, who went over her head to Kuropas. A new program was instituted in Ohio from which she and her staff were physically and organizationally excluded. This outraged her, and there was more friction. She continued to complain. The merits or demerits of positions she took can be argued, but basically she often had cause to feel her office was being slighted, particularly when she did not always receive a rational reply. She came to believe her troubles were created by Kuropas' sex bias, and undoubtedly this factor was overemphasized in her mind. ACTION had many problems, including a shortage of funds, changing forms of organization and responsibility, and top management inadequacies in the Region, all of which contributed to her frustrations and accounted for some of Kuropas' actions.

In August, 1973, plaintiff, by memorandum, said she had no equipment, forms, materials, briefing room or personnel to undertake certain new Volunteer Support Functions, and could not accept the responsibility. Kuropas objected to her raising these matters which he said had already been discussed, and replied with the following caution:

I am becoming increasingly concerned with your administrative style, especially your apparent inability to treat your fellow workers with professional respect. The tone of your memorandum to me and to other staff members, your bursting out in tears at meetings, your complaints about the competencies of other people, and your increasingly negative attitude about our agency are unbecoming to someone in your professional position. I strongly urge you to review the manner in which you are being perceived and to take immediate steps to change it.

He proceeded about this time to develop a file to "keep book" on complaints about her, and at some point he recommended she be terminated. He contends her attitude had become so negative that she was a "wet blanket," obstructing programming efforts in Cleveland.

In anticipation of the selection of a permanent State Director for Ohio, the vacancy was published, and applications solicited under standard merit staffing procedures. Plaintiff did not apply for the Wisconsin or Michigan vacancies, where Kuropas had pre-selected males, relying on his earlier promise to support her for the Ohio position. The whole process was terminated in midstream in late February or early March, and Johnson's lateral transfer perfected. Documentation of the process, as far as it went, is incomplete since some pertinent records were destroyed in the regular course of business. Based on the incomplete data still available, Johnson ranked first for Ohio, while plaintiff was apparently toward the bottom of the applicant pool. It is noteworthy that Kuropas filed a strong objection to plaintiff without interviewing her, as was required by the regulations. He stated that her interpersonal relations were poor, and that appointment of her to the directorship would be a serious mistake. There is an indication he also may have influenced the ratings of other rating officials.

Significantly, Kuropas never told plaintiff he was withdrawing his support for the Ohio directorship, nor was she encouraged to apply for the Wisconsin or Michigan directorships which were still open. While Kuropas had some reason to question her interpersonal relations, his treatment of her lacked integrity and is reprehensible. His testimony seeking to justify his conduct was wholly unconvincing.

■ It is not the Court's responsibility to make adjustments to correct this personnel mismanagement and inequity. The Court can only intervene here if the conduct challenged is shown by a preponderance of the evidence to have been motivated in whole, or in part, by a purpose to discriminate due to plaintiff's sex. That Kuropas came to dislike Skelton and treated her unfairly is clear. The more difficult question is whether Kuropas' conduct reflected an antipathy to women rather than an antipathy solely to this woman's personality. The distinction is fundamental, although this type of differentiation, which judges trying these *de novo* discrimination cases must make, is subtle and difficult to draw. Here the Court is satisfied that more than a personality conflict was present.

There is proof which the Court accepts that Kuropas did not like "pushy women," and felt they needed to be handled firmly. Plaintiff was assertive and this annoyed Kuropas, particularly because she often had tears down her face when pressing a point. These tears were apparently due to a physiological condition rather than crying as it appeared to be.

But these insights are not enough. The question of whether Kuropas plotted to deny plaintiff the Ohio directorship because she was a woman, or whether he caused her removal because she proved not qualified for the job, hinges in part on the testimony of Charles Cain, a black and formerly one of Kuropas' deputies. Cain testified that he entered a conference where Kuropas was discussing Ohio with another deputy and some staff people, and heard Kuropas say he was planning to put another woman, Johnson, over Skelton. According to his own testimony, Cain laughed, and then objected when he found this was a serious proposal, commenting that it wouldn't work, that the women would devour each other. Cain testified that Kuropas said "now you are beginning to use your head—that is the intent." Kuropas denies this, and the only other participant called to testify has no recollection. Cain did not get along with Kuropas, though neither did many other employees. Cain was discharged by Kuropas for irregularities in his expense accounts, and aspects of that issue are still unresolved in a discrimination suit Cain has pending against Kuropas.

Cain, in spite of these infirmities, was more credible than Kuropas, and a conversation of this type probably occurred. It would appear from all the proof that the decision to appoint Johnson as Ohio Director was not, as plaintiff contends, solely a "plot" to destroy both women. Johnson was highly qualified. She had had wide experience with the aged, an area especially useful in Ohio. She is not a compliant or unassertive person. The position was offered when her then-current job was threatened by a reduction in work force. She took a voluntary grade demotion, but no pay decrease, and was placed in the job without following merit staffing procedures. However, this action was in full accord with Civil Service procedures under the circumstances. She was probably better qualified in some respects than plaintiff who, of course, was also qualified, and had admittedly performed adequately.

■ Defendant takes the position that there can be no sex discrimination as a matter of law when one woman is advanced over the other. This proposition has superficial merit, but the inquiry must go deeper. It is enough to show by a preponderance of the evidence that if plaintiff had been a man she would not have been treated in the same manner, and at the very least would have been afforded genuine opportunity to advance to another state directorship, possibly one of those then available. If Kuropas was motivated by antipathy for women in his mistreatment of plaintiff, this also will

suffice to fall within the strictures of the Act. The Court on all the credible evidence finds both of these propositions more likely so than not so, and thus plaintiff has met her burden by a preponderance of the evidence. The proof supports findings to this effect and requires judgment for plaintiff.

Plaintiff seeks to be appointed Ohio Director. This will be denied. Johnson had superior qualifications, and in all probability would have prevailed if the selection had been made on an impartial merit promotion basis.

Plaintiff seeks back pay. She has received pay at GS–13 level for the period she was Acting Director. There is no basis for concluding that she would have succeeded in obtaining a merit promotion to the directorship in Wisconsin or Michigan if she had applied. Back pay is not warranted.

The equities of the situation do, however, require that she receive some relief for the sex discrimination which she suffered. The Court will direct that her name be presented for consideration as a State Director for the next three vacancies as they occur, or until she is appointed to such a position or a position acceptable to plaintiff at the level of GS–13 or above. If the position is to be filled by a merit staffing promotion she shall be listed among the top three candidates. Further, the Court directs that she be interviewed by a panel which includes at least one woman, and her qualifications appraised without reference to any adverse comments concerning her qualifications emanating directly or indirectly from Kuropas. An injunction against further reprisal for pressing equal employment claims shall be entered, and she shall be awarded her costs and attorneys' fees for this action. Since Kuropas has left the Agency, no further relief is required.