**Marlys VANT HUL, Plaintiff,**

v.

**The CITY OF DELL RAPIDS, Defendant.**

**No. CIV77–4084.**

United States District Court, D. South Dakota, S. D.

Dec. 20, 1978.

---

Dennis C. McFarland and David R. Nelson, Sioux Falls, S. D., for plaintiff.

Deming Smith, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Marlys Vant Hul is a 30-year old white woman from Dell Rapids, South Dakota. She brought this action against the city of Dell Rapids and Gene Marcher on August 19, 1977, seeking backpay, reinstatement, and numerous items of damages, costs, and attorneys' fees. On November 4, 1977, this Court dismissed the complaint as to Gene Marcher, a former Dell Rapids mayor. On March 6, 1978, I granted the Dell Rapids motion to strike various portions of the complaint and damage prayer. A trial was commenced before this Court on September 6, 1978, and concluded September 15, 1978. This Court has carefully scrutinized and analyzed the trial testimony and exhibits and briefs of counsel and declares the following to be its findings of fact and conclusions of law pursuant to F.R.C.P. 52(a).

The plaintiff had at least three years experience in the on-sale retail liquor business. Vern Walker, the previous manager of the Dell Rapids liquor store, determined in August, 1975, that he would step down as manager after seven years. He recommended the plaintiff for the job. After a meeting of the Liquor Committee of the city council and Mayor Marcher, the Committee decided on a four-month trial period for the plaintiff and told her that if she could handle the job, she could continue as manager. The compensation agreed upon was $520 per month base salary plus 10% of the net profits from the business. In addition to her salary, plaintiff was to receive one day per month sick leave accumulative up to 30 days and health and life insurance. The city's monthly share of the premium paid for insurance was $31. Plaintiff also was to receive a share of the proceeds from an electronic machine and jukebox, but no evidence was introduced as to the profits earned from the machines.

After plaintiff took over as manager, it appears that the profits of the business increased. It also appears that the plaintiff followed the city council's instructions that she "get rid of the dead stock", discourage fights, and take the gambling machines out of the bar and liquor store.

The plaintiff stated that on about December 1, 1975, she was aware of comments from Arnold Wildermuth, city finance officer, that "profits were up again but the mayor still wants a man." At the city council meeting on December 17, 1975, the plaintiff's contract renewal was discussed. The liquor commission recommended 2–0 with one abstention that plaintiff be rehired, and the council voted 4–3 with one abstention to rehire plaintiff. At this point, the mayor vetoed the resolution and stated, "I totally disagree with this and I veto it." From that moment on, many questions arose and the situation was in limbo, since no one knew whether the mayor had the legal authority to veto a resolution.

Thereafter, plaintiff challenged the legal authority of the mayor to veto a resolution, commencing a mandamus action in the South Dakota state courts. (This action was subsequently dismissed). On January 6, 1976, having been served with a notice of the mandamus action, the mayor informed the plaintiff that she was no longer employed by the city. When questioned about his state of mind, the mayor stated that he didn't think anyone suing the city should be employed by the city.

Also on January 6, 1976, another city council meeting was held. The mayor moved to rescind the resolution to rehire plaintiff and much discussion followed. Testimony conflicted as to the mayor's language during the debate. Plaintiff's witnesses stated that the comment "that *job* needs a man" was made, while defendant's witnesses stated that the comment "that *place* needs a man" was made. After the debate, a vote was taken resulting in a 4–4 tie, and the mayor broke the tie, thus rescinding the resolution rehiring plaintiff.

Plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission, and on May 27, 1977, received her "right to sue" letter after suggested conciliation procedures were ineffective. This suit was commenced within 90 days of receipt of the "right to sue" letter. Therefore, this Court has jurisdiction to consider the plaintiff's claims.

After her job was terminated, it appears that the plaintiff searched for employment from January, 1976, until March, 1978. She applied at ten employers before she was hired in March of 1978. She also worked parttime in 1976, earning a total of $1,022.25, and received tips totalling less than $20. She also babysat, earning less than $100. Each year the applications on file for the manager's position were considered by the council, including the plaintiff's application. It did appear, however, that the incumbent manager was considered as the first choice for the manager's position the following year.

At a January 20, 1976, meeting, the city council appointed Erma Goodale, a woman, as temporary acting manager. Mrs. Goodale has continued in that position until the present time.

■ In order to recover under the Civil Rights Act, 42 U.S.C. section 2000e *et seq.*, the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), set forth the four tests that a plaintiff must meet to establish a *prima facie* case. The tests, as applied in this case, require the plaintiff to show:

a. That she belongs to a minority;

b. That she applied and was qualified for a job for which the employer was seeking applicants;

c. That she was rejected despite her qualifications;

d. That after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications.

■ Plaintiff, as a female, was a member of a protected minority. Indeed, "In enacting the prohibition against discrimination based on sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *United States v. City of Buffalo*, 457 F.Supp. 612, 629 (W.D.N.Y.1978) *citing Sprogis v. United Airlines, Inc.*, 444 F.2d 1194 (7th Cir. 1971), *cert. denied* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). The sexual stereotypes of the weak woman and the husky man were at the heart of the discussions surrounding plaintiff's termination in the instant case. The mayor stated that former manager Walker was a "big man and could handle things". He further stated that a man in the bar could help carry up supplies and do the rough work. He felt a lot of respect for ladies, according to his testimony, but stated that a man "would create good feeling". Much trial testimony conflicted as to whether the mayor had stated "that *job* needs a man" or "that *place* needs a man" when discussing plaintiff's employment situation. It is this Court's opinion that the specific language

used by the mayor is not crucial to an analysis of the mayor's and city's motivation. A discriminatory purpose depends not on specific words used but upon the impulse behind the action taken. It is clear to this Court that such a discriminatory impulse was present when the city decided not to renew plaintiff's contract.

■ It has been stated that the Act rejects the notion of "romantic paternalism" toward women and seeks to put them on equal footing with men. *U. S. v. City of Buffalo, supra* at 457 F.Supp. 629. In order for this Court to follow such a purpose, I must find that the action of the city council was discriminatory toward plaintiff.

The second test of *McDonnell Douglas, supra,* is the demonstration that the plaintiff was qualified for the job. Plaintiff's past experiences, the increased profits under plaintiff's management, and statements made at the time she was initially hired persuade me that she was eminently qualified for the job.

Third, under *McDonnell Douglas, supra,* the plaintiff must demonstrate that in spite of her qualifications, she was rejected. This factor appears obvious in an analysis of the testimony. On January 6, 1976, the Dell Rapids Chief of Police delivered a letter drafted by the mayor to the plaintiff. The letter relieved her of "all duties" incident to employment at the Municipal Liquor Store.[1] This Court finds that the rejection was based upon the city's discriminatory policy toward females.

Finally, *McDonnell Douglas* requires the plaintiff to show that after her rejection the city continued to seek applicants from persons of the plaintiff's qualifications. From a review of the applications on file as exhibits, I have determined that this requirement was also met.

Having found that the plaintiff has established a *prima facie* case under the requirements of *McDonnell Douglas,* this Court must analyze whether the defendant has shown a nondiscriminatory reason for the discharge.

Defendant attempts to meet this burden by setting forth certain complaints, most of them from unnamed individuals, about a myriad of problems at the liquor store. This Court finds, however, that the reasons[2] articulated are not legitimate but "as a pretext for the sort of discrimination prohibited by (the Act)." *McDonnell Douglas, Id.* at 411 U.S. at 804, 93 S.Ct. at 1825.

■ Because of the preceding analysis, I have determined that the defendant city has violated 42 U.S.C. section 2000e *et seq.* by unlawful discrimination against the plaintiff.

■ The defendant has also suggested that since the plaintiff's replacement, Mrs. Goodale, was a woman, there could be no sex discrimination against the plaintiff. Notwithstanding the testimony that Dell Rapids City Attorney Allen Brown advised the council against firing Mrs. Goodale because it might hurt the lawsuit with the

1. It should be noted that 42 U.S.C. section 2000e–3(a) states in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

The mayor stated that he didn't feel anyone suing the city should be employed by the city. Technically, plaintiff's mandamus action in the state court to overturn the mayor's veto does not fall within the statutory proscription cited above. Consistent with the spirit of the law, however, this Court finds the statements and dismissal action relevant to the motives of the city. While not a technical violation of 42

U.S.C. section 2000e–3(a), the city's action indicates conduct based upon a discriminatory motive. Because of my disposition on the merits of the case under 42 U.S.C. section 2000e–2, I make no specific finding as to whether any contemplated charges of sex discrimination under 42 U.S.C. § 2000e–3(a) caused plaintiff's dismissal.

2. The "reasons", from warm beer, dirty glasses, and overflowing toilets to bookkeeping errors appeared to be the same under the prior seven-year tenure of Vern Walker and the subsequent management of Erma Goodale. These "reasons", however, were seen as sufficient to terminate the employment of the plaintiff, but not the employment of Walker or Goodale. *See East v. Romine, Inc.,* 518 F.2d 332 (5th Cir. 1975).

plaintiff, this Court finds such an argument at odds with the basic purposes of the Act. If the purpose of the Act were to guarantee that a definite number of females were employed, replacing one female with another would satisfy the statute. However, the objectives in the law are to achieve equality and eliminate discrimination based upon artificial, arbitrary and unnecessary barriers to employment which Congress has determined have no relevance to satisfactory employment. *See Griggs v. Duke Power Company*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). To follow such a purpose, this Court finds that the relevance of defendant's hiring a female replacement is minimal.[3]

■ The final question for this Court is the nature and extent of the remedy to which the plaintiff is entitled. The purpose of monetary relief in a civil rights action is to make persons whole for the injuries suffered on account of unlawful employment discrimination. Civil Rights Act of 1964 section 706(a) as amended 42 U.S.C.A. section 2000e–5(a); *Rogers v. Equal Employment Opportunity Commission*, 179 U.S. App.D.C. 270, 551 F.2d 456 (1977).

■ The remedy is properly addressed to the sound discretion of the Court. *See, e. g., Fountain v. Safeway Stores, Inc.*, 555 F.2d 753 (9th Cir. 1977).[4] And, of course, the objective of the award is not to punish the defendant but to make the injured plaintiff whole.

■ Clearly, the plaintiff should be entitled to the difference between her earnings had she been employed by the defendant and the actual earnings that she was able to obtain with reasonable diligence. This Court finds that the plaintiff used reasonable diligence in searching for employment. (no evidence to the contrary being submitted at trial). She did not find employment until March of 1978, a 26-month time span.

Plaintiff made $525 per month plus 10% of the profits from the liquor store. In the four month time span, plaintiff managed the bar, the 10% of the profits totalled $1,768.69, or an average of $442.17 per month. This Court has determined that a reasonable backpay figure is the average pay provided the plaintiff during her four month trial period ($967.17 per month for 26 months), or a total of $25,146.42, less plaintiff's other earnings during that period. As I have indicated, the plaintiff earned $1,022.25 in 1976, plus less than $120 in miscellaneous babysitting jobs, or a total for other earnings of $1,142.25. Reducing the backpay award by $1,142.25 leaves a net award of backpay due to the plaintiff of $24,004.17.

This Court has also concluded that prejudgment interest at the legal rate is warranted to make the plaintiff whole. *See Tidwell v. American Oil Company*, 332 F.Supp. 424 (D.Utah 1971). In light of the large objectives of the Act, such a remedy is not only desirable but necessary. *See Ablemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Similarly, this Court has concluded that plaintiff should recover the contributions the employer would have made to the life insur-

---

**3.** *See Skelton v. Balzano*, 424 F.Supp. 1231, 1235 (D.D.C.1976), where the court stated:

Defendant takes the position that there can be no sex discrimination as a matter of law when one woman is advanced over the other. This proposition has superficial merit, but the inquiry must go deeper. It is enough to show by a preponderance of the evidence that if plaintiff had been a man she would not have been treated in the same manner, and at the very least would have been afforded genuine opportunity to advance . . .

*See also Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460 (N.D.Cal.1978), where the court held that evidence that an employee charging dis-

crimination was replaced with an individual of the same race may not rebut a *prima facie* showing of discrimination, because, in some instances, selection of a replacement may have been to cover up or conceal discrimination.

**4.** Some courts have indicated that once employment discrimination is proved, a presumption of entitlement to backpay arises and backpay must be awarded. *McCormick v. Attala County Board of Education*, 541 F.2d 1094 (5th Cir. 1976). While this Court does not feel that backpay *must* be awarded in all cases, I do recognize that an award of backpay is proper in the present case.

ance fund, of $31.00 per month for 26 months (a total of $806.00).

This Court has determined that the monetary awards should terminate in March of 1978, since it is speculative whether the plaintiff would have continued in defendant's employ after that time. *Barnes v. Rourke*, 8 F.E.P. 1112, .1116 (M.D.Tenn. 1973); *See* Schlei and Grossman, *Employment Discrimination Law*, (1976), at page 1240, and cases cited therein. I have also concluded that the plaintiff's share of the jukebox and electronic machine income is too speculative to be a part of the plaintiff's award, since there was no evidence as to the profit.

Finally, I have carefully considered whether reinstatement would be proper in the present case. Because of the friction between the plaintiff and the defendant[5] and their close working relationships, and further because of the temporary one-year manager's job, this Court has determined that reinstatement is not proper. It would be speculative to think that plaintiff would have been reemployed in 1979 on her series of one-year contracts. I do note, however, that plaintiff can reapply for the manager's job when the decision is made for subsequent years.

I also find that the plaintiff is entitled to reasonable attorneys' fees and costs. Counsel for the plaintiff shall present a statement of reasonable attorneys' fees, within 20 days, and defendant's counsel shall have 20 days to make objections or comments. Plaintiff's counsel will have 5 days to reply. Thereafter, the Court will determine a reasonable attorneys' fee award.

---

**5.** See *E. E. O. v. Kallir, Phillips, Ross, Inc.*, 420 F.Supp. 919 (S.D.N.Y.1976), *aff'd* 559 F.2d 1203 (2d Cir. 1977), *cert. denied* 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).