Nora King **HOPKINS**, Plaintiff,

v.

**CITY OF JONESBORO, ARKANSAS, an Incorporated City, Defendant.**

**No. J–C–82–212.**

United States District Court,
E.D. Arkansas,
Jonesboro Division.

Dec. 16, 1983.

Murrey L. Grider, Wilson, Grider & Castleman, Pocahontas, Ark., and Dick Jarboe, Ponder & Jarboe, Walnut Ridge, Ark., for plaintiff.

Judy A. Henson, City Atty., and Berl Smith, Jonesboro, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

Plaintiff Nora King Hopkins, a white female, sued the City of Jonesboro, Arkansas under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. alleging that discrimination against her because of her sex resulted in her constructive discharge. She contended that the defendant discriminated against her in regard to assignment to radio relief, days off, transfer to full time radio operator and sick leave request. The defendant denied any discriminatory motive, contending that all of its decisions were made to enhance the efficiency of the Jonesboro Police Department, the plaintiff's employer.

The defendant filed a motion to dismiss for failure to file the EEOC complaint within 180 days of the alleged discriminatory action. The Court denied that motion in its Order of September 6, 1983. For the reasons stated therein the defendant's continuing objection that the 180 day period had elapsed will not be addressed in this opinion.

This cause, having been tried to the Court and briefs submitted to the Court, is ready for determination.

The plaintiff relies on a disparate treatment theory to establish a case of discriminatory discharge. In order to establish a *prima facie* case she must show that she was a member of a protected class, that she was capable of performing the job, and that she was discharged. In a constructive discharge case the plaintiff

must show that the defendant deliberately rendered her working conditions intolerable forcing her to resign. *Johnson v. Bunny Bread Co.*, 646 F.2d 1250 (8th Cir.1981). The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the discharge. *Id.* at 1254. The employer must only raise a genuine factual issue as to whether the plaintiff was discriminated against on account of her sex. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The plaintiff must then show that the proffered reason was a pretext for discrimination. This burden merges with the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. This burden rests with the plaintiff throughout the trial. *Id.* at 255, 101 S.Ct. at 1094.

*Chronology of Events*

Plaintiff began to work for the Jonesboro Police Department in the Fall of 1976. Then Chief of Police James O. Medlock testified that he hired the plaintiff as a police officer and told her that after serving for two years as a radio operator she would go out on the "street" as a regular patrol officer. In August of 1978 she attended the Arkansas Police Academy at Camden, Arkansas, graduating on October 6, 1978. She, however, did not qualify in firearms while at the academy, (see defendant's exhibit 2). Upon returning to Jonesboro from the Academy she was assigned patrol duty in a vehicle with another officer for a two week period. She was then assigned by Chief Medlock to full time patrol duty by herself. At all times relevant to this action, the plaintiff was the only female police officer assigned patrol duty in the Jonesboro Police Department. The only other female police officer employed by the Department, Charlotte Wooten, is the Chief's secretary.

In September, 1979 Chief Medlock, having served with the Department for twenty years, left and was replaced by Chief Edward Cunningham. At that time the plaintiff was still a patrol officer.

While Medlock was still Chief (none of the witnesses testified with specificity as to most dates) the plaintiff began working three days per week on patrol and two days per week as relief for the regular radio operator on her shift, which was the first shift.

The Jonesboro Police Department had three shifts: 1st shift 7 a.m. until 3 p.m.; 2nd shift 3 p.m. until 11 p.m.; and 3rd shift 11 p.m. until 7 a.m. Each shift had one radio operator who worked five days per week. On the other two days of the week one of the patrol officers would perform the radio operator's duties on that shift.

The plaintiff testified that in late 1980 or early 1981 she complained to her superiors that there were several other officers on her shift with less seniority who should take her place as the designated relief radio operator. Her request to be placed back on patrol five days per week was denied.

During this same period she also complained to her supervisors that her seniority on her shift gave her some choice in determining which two days each week she would have off. Her request to change from Tuesday-Wednesday off to Sunday-Monday off was denied.

In September, 1981 she was taken off of patrol duty on the first shift and assigned the job of full time radio operator on the second shift. After complaining about the assignment to the second shift, she was assigned to the third shift as radio operator.

The plaintiff complained to Chief Cunningham and other superiors that it was unfair to demote her to radio operator after having served as a patrol officer for three years. Her continuing requests to be returned to patrol duty were denied. During this period the plaintiff, suffering from gastritis, had great difficulty in obtaining a week's sick leave as requested by her physician, Dr. Joe H. Stallings. After one phone call and three letters from Dr. Stall-

ings, Chief Cunningham finally allowed her the sick leave.

Having served as a full time radio operator since September, 1981, the plaintiff resigned in May, 1982. Her EEOC complaint was filed May 20, 1982 and she received her Notice of Right to Sue June 23, 1982. The complaint in this action was timely filed on September 10, 1982.

### Discriminatory Acts

*Radio Relief Two Days per Week* —The plaintiff contends that although her initial assignment to relieve the radio operator on the first shift was legitimate since she was the most junior officer on that shift at that time, later when there were several male officers with less seniority on her shift she should have been relieved of that duty. She contends that the failure to assign the most junior one on the shift to radio relief was an act of discrimination. None of the witnesses denied that plaintiff had more seniority than several male officers on her shift.

The plaintiff testified that it had always been the department's policy to assign the most junior officer on the shift to radio relief. In addition, Chief Medlock, Assistant Chief Marvin Cook, former Lieutenant William Jackson, and radio dispatcher Judy Gage (a "civilian" employee of the Department) all testified that although the Department had no written policies on the subject, the normal or usual policy was that the junior officer on each shift would relieve two days a week on the radio. The Court finds that Chief Cunningham's denial that this was his policy to be totally inconsistent with the credible evidence. The Court further finds that the policy of the Department with respect to radio relief was not followed in the case of Nora Hopkins.

*Days Off*—The plaintiff contends that it was the policy of the Jonesboro Police Department to allocate days off by seniority on each shift. She contends that when she became second in seniority among the patrol officers on her shift that she should have been allowed to choose Sunday-Monday for her days off. She argues that her supervisor's refusal to let her have those days was a decision that was motivated by her sex. It was undisputed that to obtain at least one weekend day off was desirable to most officers. Chief Medlock, Captain Duffy Peronia, Captain of the Traffic Division, Cook and the Plaintiff testified that days off were determined by seniority as a matter of policy. Again, Chief Cunningham denied that such was the Department's policy.

Chief Cunningham stands alone in his assertion at trial that seniority played no role at the Jonesboro Police Department. The Court finds his testimony to be outweighed by that of the other witnesses.

*Transfer to Radio Full Time*—The plaintiff contends that she was transferred from patrol duty on the first shift to full time radio operator on the second and then the third shifts because of her sex.

Chief Cunningham testified that the retirement of Lt. Cartwright, the 3rd shift commander, necessitated the transfer of several officers from one shift to another and the dissolution of the accident investigation team in September, 1981. The Chief stated that the transfer of the plaintiff to full time radio was one part of the reorganization caused by one Lieutenant's retirement. It was admitted that the plaintiff was the only officer who was pulled off patrol duty as a result of the reorganization. All of the other affected officers suffered no change in the type of duty they performed.

When plaintiff was transferred from 2nd shift to 3rd shift radio she was replaced on the 2nd shift by a young man who had been with the department only four to six weeks. The Chief and the Assistant Chief testified that the plaintiff had been transferred to radio because they needed someone with her expertise in that position. The vacancy which had been created by Lieutenant Cartwright's retirement was filled by the hiring of a new male patrol officer, in effect replacing the plaintiff on patrol.

At some point after plaintiff's resignation (again, the parties were indefinite on most of the dates) a third civilian was employed as radio operator.

The plaintiff served in the radio operator position for approximately eight months before she resigned. Despite her continued plea to be placed back in patrol, the defendant neither replaced her with a civilian nor with any other officer with less seniority nor with the patrol officer who was Cartwright's numerical replacement.

The plaintiff testified that when she complained to the Chief about her assignment to radio that he told her that he was afraid that she would get hurt on the street and that as long as he was Chief she would not go back to patrol duty. The Chief denied that he had said that. Judy Gage, a radio dispatcher, testified that the Chief had told her not to send the plaintiff on any more alarms because she might get hurt. The Chief denied that he told Ms. Gage that he was fearful for the plaintiff's safety. The Court finds the plaintiff's testimony on this issue to be more credible than the Chief's. The Court recognizes the concern that Chief Cunningham had for the safety of his only female patrol officer, however, the Court does not understand why the Chief did not show the same concern for the safety of his male officers.

*Sick Leave*—The plaintiff made a request for a week off because it had been recommended by her Doctor in order to relieve her symptoms of gastritis and to run gastrointestinal tests in the hospital. The Chief's resistance to the request, requiring three doctor's letters and a personal phone call would not in isolation be evidence of sex discrimination. However, when considered with the other circumstances already mentioned, it is probative on the issue of intent to discriminate.

*Conclusions*

▮ The Court finds that the plaintiff established a *prima facie* case of sex discrimination by a preponderance of the evidence. The plaintiff is a female who was a good patrol officer according to the defendant's witnesses and she was constructively discharged. The defendant effectively rebutted the *prima facie* case by asserting that its reasons for the employment decisions relating to the plaintiff were based on her ability and experience as a radio operator and on the needs of the entire Department. The Court finds, however, that the plaintiff carried her burden of proving that the proffered reasons were pretextual and the real reason was that she is a female.

Her assignment to radio relief two days per week and her eventual reassignment to radio full time when less senior officers were available is evidence of discrimination. The defendant's assertion, through the testimony of Chief Cunningham, that seniority played no role- at the Department was untenable when compared with the testimony of every other witness at the trial. Obviously seniority was the key factor in making the questioned employment decisions and the defendant did not follow its usual or customary practice in regard to its only female patrol officer.

Further, the Court finds that the testimony of the plaintiff and of Judy Gage to the effect that Chief Cunningham feared for the safety of his only female patrol officer is evidence that he transferred her to radio full time because of her sex. There were other officers on her shift as well as on the other two shifts who could operate the radio and who had less seniority than the plaintiff.

Transfer to radio full time was a demotion in status if not in pay at the Jonesboro Police Department. There was even credible evidence from the plaintiff that radio relief had been used as punishment for patrol officers. Chief Medlock testified that an officer in the radio operator's position could not advance in rank. Chief Cunningham's denial that this was his policy was against the weight of the evidence. The Court finds that the plaintiff was reasonable in her belief that the transfer was permanent. Although, Peronia, Cook and Cunningham testified that the plaintiff was told that the transfer was temporary, she was left there for eight months with no real hope that she would ever get back to

patrol duty. It was not necessary for the plaintiff to remain in the radio position since she had every right to be a patrol officer as she had been for three years. Her resignation was in effect a constructive discharge.

Further, the treatment she received concerning her choice of days off and her request for sick leave are more evidence of the defendant's intent to discriminate. No one testified or offered any evidence to prove that the plaintiff was anything other than a good patrol officer. The Court finds that the plaintiff has carried her burden throughout to show intent to discriminate and will be compensated therefor.

*Relief*

■■■ The plaintiff has asked for damages for her mental anguish caused by the defendant's discriminatory actions. She apparently did suffer from gastritis during the time of the complained of actions. However, she also experienced a divorce at this time and her doctor stated by way of deposition that the divorce could have been a cause of her medical problem. While this Circuit allows recovery for such damages the Court does not find that her suffering was of such a degree and so clearly caused by the defendant's actions that she should be allowed a monetary award. That aspect of the claim is denied.

The plaintiff also asked the Court to reinstate her to the position of patrol officer. The law provides that a Court *"May* ... order such affirmative action as may be appropriate, which *may* include ... reinstatement...." 42 U.S.C. § 2000e–5(g). Reinstatement has been denied in cases where the Court found that the circumstances were inappropriate for such relief. *Geller v. Markham,* 24 FEP Cases 920 (2nd Cir.1980); *Vant Hul v. City of Dell Rapids,* 462 F.Supp. 828 (D.C.S.D.1978); *EEOC v. Kallir,* 420 F.Supp. 919, aff'd 559 F.2d 1203, cert. denied 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977); *St. John v. Employment Development Department,* 26 FEP Cases 288 (9th Cir.1981).

■■■ The plaintiff wants to be reinstated to patrol duty. There should be no doubt that such a job is a dangerous one which requires at times the complete confidence and cooperation of one's peers. The friction and resentment that would be caused by reinstatement would certainly affect the effective operation of the Department and could even enhance the risk of injury to a member of the public or to the plaintiff. The Court finds that reinstatement is inappropriate under the circumstances of this case.

■■■ Some courts have awarded front pay in lieu of reinstatement in cases such as this one. Front pay is designed to eliminate the future effects of past discrimination where the plaintiff has been unable to find another job in mitigation of her damages. *Fitzgerald v. Sirloin Stockade,* 22 FEP Cases 262 (10th Cir.1980); *O'Donnell v. Ga. Osteopathic Hospital,* 30 FEP Cases 195 (N.D.Ga.1982). The Court finds that although the plaintiff has had some 18 months in which to find a job, an additional 3 months pay is reasonable front pay under the circumstances.

Although Chief Cunningham and others denied that the plaintiff's failure to pass the firearms test was a factor in the decision to take the plaintiff off patrol duty, the Court is alarmed that a police officer has been patrolling the streets of Jonesboro carrying a weapon that she was not qualified to use. Indeed the plaintiff, the City and its residents are fortunate that plaintiff has apparently not been required to use her pistol other than as a symbol of her authority. In fashioning an equitable remedy the Court does not disregard this fact.

■■■ The plaintiff testified that she was not paid for two weeks vacation which she had earned and there was no evidence to the contrary. The Court finds that she is entitled to two weeks vacation pay for 1982.

The plaintiff testified that she has earned only $4,200 since she left the defendant's employ. This will be deducted from her award. Plaintiff is awarded monetary damages as follows:

| | |
|---|---|
| $19,620 | (18 months at $1,090 per month) |
| $ 545 | (two weeks vacation pay for 1982) |
| $ 3,270 | (three months front pay) |
| $23,435 | (total award before mitigation) |
| –$ 4,800 | (plaintiff's earnings past and future) |
| $18,635 | NET AWARD |

IT IS CONSIDERED, ORDERED AND ADJUDGED:

That the plaintiff is awarded damages in the amount of $18,635.00 on her complaint against the defendant, plus attorneys' fees and costs. The prayer for injunctive relief is denied. Plaintiff's attorneys shall submit their fee request to the defendant's attorneys within fourteen days of receipt of this Order. The Court encourages the attorneys to reach an agreement on the amount of the fees and costs. If an agreement cannot be reached, then plaintiff's attorneys shall submit their request to the Court by affidavit no later than January 6, 1984 and the defendant may respond within seven days thereafter.