**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 29 1999**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CONNIE MARION,

       Plaintiff - Appellant,

v.

THE SLAUGHTER COMPANY,
a Division of R.E. Phelon Co., Inc.,

       Defendant - Appellee.

No. 98-6286

(W.D. Oklahoma)

(D.C. No. CV-97-764-L)

---

ORDER AND JUDGMENT *

---

Before **ANDERSON** and **BRISCOE** , Circuit Judges, and **KIMBALL** ,** District Judge.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**The Honorable Dale A. Kimball, United States District Judge for the District of Utah, sitting by designation.

Connie Marion ("plaintiff") brought this Title VII [1] action [2] against The Slaughter Company, a division of R.E. Phelon Co., Inc. ("TSC"), alleging gender-based job and wage discrimination. The case went to trial on the issue of disparate treatment. At the conclusion of the trial, the jury returned a verdict against the plaintiff, answering "no" to the following question on the verdict form: "Has plaintiff Connie Marion proved that her sex was, more likely than not, a motivating factor in establishing her rate of pay?" Appellant's App. at 68. Subsequently, the plaintiff filed post-trial motions for judgment as a matter of law and seeking a determination in equity by the court that despite the absence of intentional discrimination, the gender distribution in TSC's work force violated Title VII under a disparate impact theory. The district court ruled that neither the pleadings, the law, nor the evidence supported a disparate impact claim, and it denied relief on the plaintiff's post-trial motions.

On appeal, the plaintiff contends that the district court erred by failing to rule that the gender composition of the departments in question constituted a per

---

[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A.

[2] The complaint also alleged retaliation in violation of Title VII as a result of the complaint Mrs. Marion filed with the Equal Employment Opportunity Commission, and violations of the Equal Pay Act, 29 U.S.C. §§ 206(d), 215(a)(3), 216, and the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. The district court granted the defendant's motion for summary judgment on those claims. Mrs. Marion does not pursue those portions of the judgment on appeal.

se violation of Title VII, and by failing to hold or to instruct the jury that the gender distribution in the workforce amounted to a facially neutral policy having a prohibited disparate impact. The plaintiff seeks either outright reversal and entry of judgment in her favor, or a new trial. For the reasons stated below, we affirm.

## BACKGROUND

TSC manufactures electronic testing equipment in a small facility employing approximately fifty people. The process involves sheet metal work fabricating cabinets of various sizes, and the assembly of components in the cabinets. This work has been departmentalized into sheet metal and assembly. In addition to the shop foreman, the sheet metal department usually includes two machinists, two or three sheet metal workers, and until recently, a painter. The assemblers are not further designated by job category.

The work force in both departments is small: on average, six people or less each, including a supervisor in assembly and a plant foreman in sheet metal. Turnover is rare in the sheet metal department. In the fifteen-year period from 1983 to 1998, only two or three openings occurred, each filled by a male applicant. A larger turnover occurred among the assemblers, although no exact numbers for this same period are furnished by the parties. All those vacancies

were filled by women. Except for two instances a number of years ago, the work force in the sheet metal department has been entirely male, and entirely female in the assembly department. Overall, the wages paid in the sheet metal department are higher than those paid to the assemblers, but some assemblers make more than some of the employees in the sheet metal department. The salary of the plant foreman has always been higher than the salary paid to the supervisor of the assemblers.

The plaintiff, Connie Marion, started with the company in 1967 following her graduation from high school. Throughout her career she has worked in the assembly department. In 1985, following the purchase of the company by R.E. Phelon Co., Inc., the plaintiff was promoted to the position of assembly supervisor. Beginning in 1990, she began participating in the hiring process for assembler positions. In recent years, employees working as assemblers included the plaintiff's sister, sister-in-law and a woman recommended by the plaintiff's father. At the time of trial, only three employees other than the plaintiff were working as assemblers.

Howard Reed started with TSC in 1972 as a sheet metal worker. In 1985, he was promoted to plant foreman, supervising the sheet metal department. He was paid more than Mrs. Marion, a fact she discovered and contested in 1995.

The plaintiff demanded that TSC raise her pay to equal Mr. Reed's pay. That demand was refused and this suit resulted.

Prior to trial, the district court, in response to cross-motions for summary judgment, ruled first that the plaintiff had not alleged any failure to hire, promote or transfer her to the sheet metal department, so the case would be treated as one asserting disparate pay based on gender. Second, the court ruled that the plaintiff had not identified any facially neutral employment policy or practice which disparately impacts women, so the plaintiff's case would be treated as one alleging disparate treatment. The questions reserved for trial were "whether the Defendant has intentionally engaged in a practice or policy of maintaining gender-based job categories, and of intentionally discriminating between the male and female job categories in its pay structure," and further, "whether the pay disparity between the Plaintiff and the male supervisor was motivated by gender discrimination." Order of Feb. 3, 1998, at 11; Appellant's App. at 45.

The case was extensively prepared and fully presented to the jury. The plaintiff called five witnesses and the defendant six, including expert witnesses for both sides. The plaintiff focused on her claims: (1) that the work force was invidiously segregated by gender; (2) that her job and that of the other assemblers was as complicated and valuable to the employer and in the workplace generally as the job performed by Mr. Reed and others in the sheet metal department, thus

the difference in pay was based on gender; and (3) that if her job was less valuable, then the company had intentionally placed men in the higher paying jobs.

Both parties presented evidence regarding the job description, functions, skill, training, and experience of positions in both departments, including the position of supervisor and that of plant foreman. They introduced evidence regarding the company's record of filling job vacancies and paying employees, and expert testimony regarding the value of the various jobs to the company and generally in the economy. The parties also introduced directly conflicting testimony regarding alleged statements and attitudes as to gender and jobs in the two affected departments.

As indicated above, the jury, after assessing the evidence and necessarily making credibility determinations relating to direct collisions in the testimony, determined that Mrs. Marion had not proved that her pay was affected by her gender.

Subsequently, the plaintiff filed a post-trial motion for judgment as a matter of law or for a new trial. The district court denied the motion, surveying the evidence and ruling, in relevant part, as follows:

## A. Claim of Discrimination with Regard to Pay

The Court finds that the Defendant offered ample evidence of legitimate, non-discriminatory reasons for the pay disparity between the Plaintiff and the plant foreman. The evidence at trial showed significant differences in the duties required of the two positions. According to the Defendant's evidence, the plant foreman supervised and trained a more highly skilled group of employees, including sheet metal workers and machinists. Unlike the assembly supervisor, the plant foreman is responsible for costly, heavy equipment. The effort required and the working conditions are different. The plant foreman works in a noisier, more hazardous environment than the assembly supervisor. A reasonable jury could find, based upon this evidence, that the pay differential was attributable to differences in the jobs, and was not the result of intentional gender discrimination.

. . . .

## B. Claim of Discriminatory Classification System

The Plaintiff also argues that the Defendant has failed to rebut her prima facie showing of a discriminatory classification system at the Defendant's production facility. However, the Plaintiff has not shown that she was "aggrieved" or harmed by the alleged classification system. . . . The Plaintiff offers no evidence that she ever sought or applied for, or was qualified for, a position in the sheet metal shop or machine shop, or for the position of plant foreman. Moreover, it was undisputed at trial that the Plaintiff participated to some degree in the hiring decisions for the assembly division, and that she selected only female applicants. The Plaintiff has failed to show that she was harmed either by being deprived of an opportunity to work in a particular position or category of jobs, or by being deprived of the opportunity to work alongside members of the opposite gender. Under the circumstances, the Court finds that the Plaintiff has not made a prima facie claim under Title VII for maintaining a discriminatory job classification system. Thus, the Plaintiff is not entitled to either judgment as a matter of law or a new trial on her discriminatory classification claim.

Order of June 15, 1998, at 2-4; Appellant's App. at 60-62 (footnotes omitted).

The plaintiff also sought reconsideration by the court of its earlier rulings that the case did not present a disparate impact claim. The plaintiff argued that the question of adverse impact is one committed by statute to the court, not the jury, and that in deciding the issue "the court must defer to factual issues as found by the jury, while making it's [sic] own independent findings on [the disparate impact claim]." Pl.'s Post Trial Br. at 2; Appellant's App. at 1512.

The district court responded in its order as follows: "Thus, it appears from the face of the statute that the right to a jury trial under Title VII extends only to a claim of intentional discrimination or disparate treatment. *See Allison v. Citgo Petroleum Corp.,* ___ F.3d ___, 1998 WL 244989 (5th Cir. 1998). <u>Accordingly the Court will now reconsider the Plaintiff's disparate impact theory</u>." Order of June 15, 1998, at 7; Appellant's App. at 65-66 (emphasis added).

The court then surveyed the law and the facts and ruled again that the plaintiff had failed to establish a prima facie disparate impact claim.[3] Alternatively, the court found and concluded as follows:

> Even if the Plaintiff had identified a specific, facially neutral policy, the Court would find in favor of the Defendant on the Plaintiff's disparate impact claim. The preponderance of the evidence at trial showed that the Defendant had legitimate, non-

---

[3]The allocation of responsibilities between the court and jury urged by the plaintiff in the district court and the court's conclusion on that point are not before us on appeal. We, therefore, take the case as presented without implying any opinion on the subject.

discriminatory reasons for its hiring practices, including the Defendant's prior experience requirement (or preference) for sheet metal workers and machinists. Further, the preponderance of the evidence at trial showed that the composition of the Defendant's work force was largely due to the gender make-up of the pool of applicants, rather than the disparate effects of any policy of the Defendant. Thus, the Court concludes that the Plaintiff is not entitled to judgment on her Title VII claim under a disparate impact theory.

Id. at 9; Appellant's App. at 67.

The district court's order stated in conclusion that the plaintiff's post-trial motions, including the motion for reconsideration, were denied. This conclusion is problematic due to the district court's determination in the order itself to reconsider the disparate impact claim on its merits, then making factual findings and reaching a conclusion adverse to the plaintiff on that claim.

## DISCUSSION

The plaintiff's brief omits a discussion of the standards that guide our review. However, as to the disparate impact issue, it is axiomatic that statutory interpretation and application are matters of law that we review de novo, while crediting facts favorable to the jury's verdict and deferring to facts found by the district court in its disparate impact ruling. See Ortega v. Safeway Stores, Inc., 943 F.2d 1230, 1244 n.29 (10th Cir. 1991).

As to the plaintiff's claim of error in the jury instructions, we review the record to determine whether the instructions properly set forth the governing law and provided the jury with an ample understanding of the issues involved; and we reverse only if, based on a review of the record as a whole, any error is determined to have been prejudicial. See United States v. Roberts, 185 F.3d 1125, 1139 (10th Cir. 1999) (citing Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1271 n.19 (10th Cir. 1988); Ramsey v. Culpepper, 738 F.2d 1092, 1098 (10th Cir. 1984)).

## A.

A disparate impact claim differs from a disparate treatment claim in that it does not require a showing of discriminatory intent. See Ortega, 943 F.2d at 1242. Instead, a plaintiff may establish a prima facie case of disparate impact discrimination by showing that a "specific identifiable employment practice or policy caused a significant disparate impact on a protected group." Id.; accord 42 U.S.C. § 2000e-2(k)(1)(A)(i); Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993) (quoting International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977) ("claims that stress 'disparate impact' involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be

-10-

justified by business necessity")); Bullington v. United Airlines, 186 F.3d 1301, 1311-12 (10th Cir. 1999).

The plaintiff advances essentially one central argument on appeal, characterized in different ways. She contends that TSC committed a per se violation of Title VII because the sheet metal department employees were male and those in the assembly department were female. In support, she relies on 42 U.S.C. § 2000e-2(a) which provides, in part, that:

It shall be an unlawful employment practice for an employer—

(2) to . . . segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

Raising the same point in a different way, the plaintiff contends that the work force gender distribution in this case necessarily resulted from a facially neutral but prohibited policy or practice [4] by TSC, i.e., the distribution proves a

[4]In an alternative argument, the plaintiff makes much of the district court's statement that TSC's hiring practices were "facially discriminatory." In reliance on that statement the plaintiff cites a multitude of cases involving an express gender-based policy. See, e.g., International Union, United Auto., Aerospace & Agric. Implement Workers v. Johnson Controls, Inc., 499 U.S. 187, 199 (1991) (policy excluding women with childbearing capacity from certain job positions). Taken in context, the district court's statement does not support the plaintiff's interpretation, and the cases cited by plaintiff with respect to express

(continued...)

-11-

practice must have existed. In these arguments the plaintiff does not focus on the supervisory jobs themselves because there has been no real turnover. Rather, she argues that the supervisor/foreman jobs are filled from within the respective departments so that the gender composition of the departments bears on her situation.

We reject the plaintiff's disparate impact arguments for three reasons, each of which is sufficient. The first reason is dispositive; the second and third are alternative reasons for affirmance.

First, and dispositively, the plaintiff lacks standing to complain of the gender staffing in the sheet metal department, and the jury has ruled out wage discrimination in her pay in the assembly department. As the district court found, the plaintiff did not seek and was not denied any position in the sheet metal department, in particular, the job of plant foreman. Nor did she plead or establish that she would have sought any such position but for some policy against it. Thus, assuming for purposes of argument that TSC unlawfully excluded females from sheet metal jobs, that fact had no effect on the plaintiff.

The district court's ruling, quoted above, correctly states that Title VII only provides a cause of action to a person who is "aggrieved" by an unlawful

---

[4](...continued)
gender-based policies manifestly do not apply to this case.

employment practice.  42 U.S.C. § 2000e-5(f).  One who is not injured is not aggrieved.   See Patton v. United Parcel Serv., Inc.  , 910 F. Supp. 1250, 1278 (S.D. Tex. 1995).  That statutory requirement reflects the requirement of standing under the case or controversy provision of Article III.  To invoke a federal court's jurisdiction a plaintiff must demonstrate three things:  (1) injury in fact; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision.      See Byers v. City of Albuquerque  , 150 F.3d 1271, 1274 (10th Cir. 1998);     see also  Lujan v. Defenders of Wildlife  , 504 U.S. 555, 560-61 (1992).  The plaintiff fails these requirements.

Second, the fact, standing alone, that TSC has all men in sheet metal positions and all women in assembly is not a per se violation of Title VII; nor is it self-proving as to the existence of a policy or practice, lawful or otherwise.  The section of the statute to which the plaintiff refers, set out above, refers to segregation or classification that tends to deprive protected individuals of employment opportunity or otherwise adversely affect employment status.  Thus, it is not the fact of separate genders in departments that is prohibited, it is the deprivation of opportunity or adverse effect on status that is prohibited.      Cf. Vant Hul v. City of Dell Rapids  , 462 F. Supp. 828, 833 (D.S.D. 1978) (stating that the purpose of the Civil Rights Act is not to guarantee that a definite number of

females are employed, but "to achieve equality and eliminate discrimination based on artificial . . . barriers to employment"). That is a matter of proof, and that burden was not carried here. Furthermore, the terms "segregate or classify," as used in the statute, are verbs denoting purposeful action by the employer. See McDonnell v. Cisneros, 84 F.3d 256, 258 (7th Cir. 1996) (under these provisions, there is no actionable discrimination without something that can be described as an adverse employment action). Pure nondiscriminatory happenstance, or results from hiring practices that are justified by business necessity do not fall in this category.

The district court also correctly pointed out numerous times in this case that the plaintiff failed to identify an actual policy or practice of TSC relating to gender in hiring. Statistics alone are insufficient. They must be tied to an identifiable practice, such as a skewed interview procedure. See, e.g., Bullington, 186 F.3d at 1314.

Furthermore, even when a specific policy or practice is identified and then statistics are offered "we require the data to cross a 'threshold of reliability before it can establish even a prima facie case of disparate impact.'" Id. at 1313 (citing Ortega, 943 F.2d at 1243). "The 'reliability' or usefulness of any particular analysis will depend on the surrounding facts and circumstances of the case." Id. (citing Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 995 n.3 (1998)). And,

-14-

"some statistical analysis may be so incomplete as to be irrelevant."    Id. at 1314, n.9.  That is the case here.

Third, even if a facially neutral hiring policy led to the gender distribution in question, the district court found that TSC had legitimate non-discriminatory reasons for its hiring decisions.  Those findings quoted above include experience, the gender of the applicant pool, low turnover, and job preference.  Plaintiff's claims of discrimination do not overcome these facts necessarily found by the jury and directly found by the district court.

**B.**

The plaintiff also claims that the district court erred by refusing to give an "inexorable zero" instruction.  Under certain circumstances an inference of discrimination may sometimes be drawn from statistical evidence that no member of a protected group has ever occupied a particular job or position.    See, e.g., Loyd v. Phillips Bros., Inc.   , 25 F.3d 518, 524 n.4 (7th Cir. 1994).  Such evidence is often referred to as the "inexorable zero."    See Teamsters , 431 U.S. at 342 n.23.

The proposed instruction to which the plaintiff refers us states, in part, "if you [the jury] find that defendant has maintained a segregated work force . . . then you must find for plaintiff on her Title VII claim."  Appellant's App. at 86.  The

district court stated that an instruction to that effect would be improper, but that plaintiff's counsel was free to argue the statistics and inferences from those claimed by the plaintiff.  There is no error in that ruling.

Throughout the trial the plaintiff's evidence and argument focused on the work force distribution, including hiring, and plaintiff's counsel vigorously pressed the contention on the jury.  In addition, the court correctly instructed the jury on the statutory provisions, on the fact that they could draw inferences from the evidence, and on the importance of considering both direct and circumstantial evidence.

In contrast, the plaintiff's view of 42 U.S.C. § 2000e-2(a) misstates the law, as we have explained above.  The district court correctly perceived the fallacy when it refused the proffered instruction.

## CONCLUSION

As our extensive quotes from the district court's opinions will indicate, the district court's treatment of the issues in this case was careful and cogent. We have considered all of the plaintiff's arguments and conclude that the district court did not err.

AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge